# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**DAVETTA TURNER-MOOTOO,**

    **Plaintiff,**

v.                         **CASE NO.:**

**SHRINERS HOSPITALS FOR CHILDREN, INC.,**

    **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, DAVETTA TURNER-MOOTOO (hereinafter "Ms. Turner" or "Plaintiff"), by and through undersigned counsel, hereby brings this action against Defendant, SHRINERS HOSPITALS FOR CHILDREN, INC. (Hereinafter "Shriners" or "Defendant"). In support of her claims, Plaintiff states as follows:

## JURISDICTION AND VENUE

1.  This is an action for damages, exclusive of interest, fees, and costs, and for declaratory relief, for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the Florida Civil Rights Act of 1992, as amended ("FCRA"), Fla. Stat. § 760.01 due to

- 1 -

Defendant's unlawful employment practices.

2. Venue is proper in this Court because all the events giving rise to these claims occurred in Hillsborough County, Florida.

## PARTIES

3. Plaintiff is a resident of Tampa, Hillsborough County, Florida.

4. Defendant is a Foreign Not for Profit Corporation with its principal Corporate Headquarters located at 2900 Rocky Point Drive, Tampa, Florida 33607.

## GENERAL ALLEGATIONS

5. Plaintiff has satisfied all conditions precedent, or they have been waived.

6. Plaintiff has hired the undersigned attorneys and agreed to pay them a fee.

7. Plaintiff requests a jury trial for all issues so triable.

8. At all times material hereto, Plaintiff was an employee of Defendant within the meaning of Title VII.

9. At all times material hereto, Defendant employed fifteen (15) or more employees. Thus, Defendant is an "employer" within the meaning of Title VII and the FCRA, Fla. Stat. Section 760.02(7).

## FACTUAL ALLEGATIONS

10. On September 6, 2010, Ms. Turner began her employment with Shriners.

11. Prior to her employment with Shriners, Ms. Turner held a supervisory position where she trained, audited, hired, and terminated employees in a medical coding department. Ms. Turner also holds certifications as a Certified Professional Coder (CPC) obtained December 2007, Certified Ambulatory Surgery Center Coder (CASCC) obtained December 2008, Certified Coding Specialist (CCS) obtained February 2009, and during her tenure at Shriners Ms. Turner obtained her Certified Professional Medical Auditor (CPMA) in October 2016.

12. Shriners employed Ms. Turner as a "coder" (also known as a "professional" or "physician" coder). Shriners performed two types of coding Evaluation and Management Coding ("E&M") and surgical coding.

13. On June 10, 2011, Ms. Turner resigned from her position at Shriners as she had gotten married on April 16, 2011, and moved to Maryland to be with her husband.

14. During her employment from September 6, 2010, through June 10, 2011, worked as a surgical coder as she had come to Shriners with

extensive knowledge in orthopedic and spinal surgery coding. During this tenure, Ms. Turner shared her surgical coding knowledge and expertise with both Tracey Adkins and Kelly Hays.

15. In June 2012, Ms. Turner returned to Florida.

16. On July 12, 2012, Shriners rehired Ms. Turner as an E&M Coder. Despite being an E&M coder, Ms. Turner frequently assisted Tracey Adkins and Sheila Heiman with their surgical coding. Eventually, Shriners just scheduled Ms. Turner to work one day a week as a surgical coder.

17. In addition to working as an E&M coder four days a week and a surgical coder one day a week, Ms. Turner began to assist Marianne Solheim and Victoria Cline with their Data Quality Monitoring Analyst even filling in for them during absences.

18. Eventually, Shriners hired Connie Rickhoff to work as a surgical coder.

19. Ms. Rickhoff's hiring allowed Ms. Turner to focus on her E&M coding duties and continued assistance as a Data Quality Monitoring Analyst on an as needed basis.

20. In July 2019, Shriners posted an available Data Quality

Monitoring Analyst and Victoria Cline encouraged Ms. Turner to apply, which she did.

21.   At the time she applied for the Data Quality Monitoring Analyst position, Ms. Turner had a vast knowledge in both E&M and surgical coding.

22.   In August 2019, Corporate Director of Revenue Integrity and Denials Management at Shriners Hospital for Children, Barbara Fisher, and Ms. Cline interviewed Ms. Turner for the Data Quality Monitoring Analyst position.

23.   Following the interview, Ms. Cline told Ms. Turner that Ms. Fisher had a concern about "buyer's remorse" regarding the selection of Ms. Turner for the Data Quality Monitoring Analyst position but seemed confident that Ms. Turner would be selected.

24.   However, in November 2019, despite Ms. Turner working for Shriners as both an E&M and surgical coder that frequently provided coding support to the lab, radiology, and profee inpatient coders as well as training and auditing new coders whenever Shriners needed her help, Shriners selected Ms. Rickhoff for the Data Quality Monitoring Analyst position. This

was the second time during Ms. Turner's tenure that a less experienced, less qualified, Caucasian coworker of Ms. Turner had been selected for a promotion over Ms. Turner.

25. At the time of Ms. Rickhoff's selection, Ms. Rickhoff had only worked for Shriners as a surgical coder which required Ms. Cline to train her in E&M coding before she could fully transition into the Data Quality Monitoring Analyst position.

26. In December 2019, during Ms. Turner's performance evaluation, Ms. Cline asked Ms. Turner to take on more job duties. Specifically, Ms. Cline asked Ms. Turner to be the main liaison for Shriners' Philadelphia facility, handling their coding A-Z, which including speaking with and training the providers for their specific needs in reference to documentation.

27. On December 16, 2019, following her annual review in which she received a 2.5% pay increase due to all her performance appraisals being in the meets to exceeds range, Ms. Turner submitted her two-weeks' notice of resignation as it became clear that Shriners wanted Ms. Turner to do all the tasks of an elevated employee without the job title, benefits, pay or growth potential.

28. Ms. Turner worked for Shriners until her constructive

termination on December 28, 2019.

## COUNT I – TITLE VII VIOLATION
### (RACE DISCRIMINATION)

29. Plaintiff realleges and readopts the allegations of paragraphs 1 through 28 as though fully set forth herein.

30. Plaintiff is a member of a protected class under Title VII.

31. Defendant's aforementioned conduct subjected Plaintiff to disparate treatment based on her race.

32. Defendant subjected Plaintiff to harassment that was sufficiently severe or pervasive enough to alter the terms and conditions of Plaintiff's employment with Defendant as Defendant denied Plaintiff job promotions and constructively terminated her employment.

33. Defendant knew or should have known of the disparate treatment suffered by Plaintiff and failed to intervene or to take prompt and effective remedial action in response.

34. Defendant's actions were willful and done with malice.

35. Plaintiff was injured due to Defendant's violations of Title VII, for which Plaintiff is entitled to legal and injunctive relief.

*WHEREFORE*, Plaintiff demands:

- (a) A jury trial on all issues so triable;

- (b) That process issue and that this Court take jurisdiction over the case;

- (c) An injunction restraining continued violation of Title VII by Defendant;

- (d) Compensation for lost wages, benefits, and other remuneration;

- (e) Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative, front pay;

- (f) Any other compensatory damages, including emotional distress, allowable at law;

- (g) Prejudgment interest on all monetary recovery obtained.

- (h) All costs and attorney's fees incurred in prosecuting these claims; and

- (i) For such further relief as this Court deems just and equitable.

## COUNT II – FCRA VIOLATION
## (RACE DISCRIMINATION)

36.   Plaintiff realleges and readopts the allegations of paragraphs 1 through 28 of this Complaint, as though fully set forth herein.

37.   Plaintiff is an African American woman and as such, member of a protected class under the FCRA.

38.   Plaintiff was subjected to disparate treatment on account of her race by Defendant's aforementioned conduct.

39.   Defendant subjected Plaintiff to harassment that was sufficiently severe or pervasive enough to alter the terms and conditions of Plaintiff's employment with Defendant as Defendant denied Plaintiff job promotions and constructively terminated her employment.

40.   Defendant knew or should have known of the unwelcome harassment suffered by Plaintiff and failed to intervene or to take prompt and effective remedial action in response.

41.   Defendant's actions were willful and done with malice.

42.   Plaintiff was injured due to Defendant's violations of the FCRA, for which she is entitled to relief.

*WHEREFORE*, Plaintiff demands:

(a) A jury trial on all issues so triable;

(b) That process issue and this Court take jurisdiction over the case;

(c) Compensation for lost wages, benefits, and other remuneration;

(d) Reinstatement of Plaintiff to a position comparable to her prior position, or in the alternative, front pay;

(e) Any other compensatory damages, including emotional distress, allowable at law;

(f) Prejudgment interest on all monetary recovery obtained.

(g) All costs and attorney's fees incurred in prosecuting these claims; and

(h) For such further relief as this Court deems just and equitable.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff respectfully requests a trial by jury.

Dated this 7th day of December 2022.

                                                       */s/ Jason W. Imler, Esq*
                                                     Jason W. Imler
                                                     Florida Bar No. 1004422
                                                     Brian T. Gruber, Esq.
                                                     Florida Bar No. 1027865
                                                     **Imler Law**
                                                     19409 Shumard Oak Dr., Unit 103
                                                     Land O' Lakes, Florida 34638
                                                     (P): 813-553-7709
                                                     Jason@ImlerLaw.com
                                                     Brian@ImlerLaw.com